UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————

IN RE DYNEGY INC.,

                    Debtor.

STEPHEN LUCAS,

                    Appellant,

          - against -

DYNEGY INC.,

                    Appellee.

———————————————————————————

12 Civ. 8908 (JGK)

OPINION AND ORDER

JOHN G. KOELTL, District Judge:

     The appellant, Stephen Lucas, appeals from an Order of the
United States Bankruptcy Court for the Southern District of New
York (Morris, C.J.), dated October 4, 2012, overruling the
appellant's preserved objection to confirmation of the Joint
Chapter 11 Plan of Reorganization (the "Plan") for Dynegy Inc.
and Dynegy Holdings LLC (collectively "Dynegy" or "Debtors").
The Order was based on a decision of the Bankruptcy Court
announced at the hearing on the appellant's objection on October
1, 2012.

     The Plan contains a release of claims against non-debtor
third parties, including the Debtors' former directors and
officers.  The Plan provides that individuals may opt-out of the
release.  The appellant is the lead plaintiff in a separate
putative securities class action against several former
directors and officers of Dynegy Inc. that are among those

purportedly released by the Plan.  That class has not yet been
certified.  The appellant argued to the Bankruptcy Court that
the release was impermissible and also sought to opt-out of the
release on behalf of himself and on behalf of the putative class
in the securities litigation.  The Bankruptcy Court overruled
the appellant's objection.  The Bankruptcy Court concluded that
the appellant did not have standing to object to the release
individually because he had opted out, and did not have standing
to object or opt-out on behalf of the putative class because he
did not represent the class outside the confines of the putative
securities class action.  The Bankruptcy Court held that, in any
event, the non-debtor third party releases were permissible
consensual third party releases because the affected parties had
failed to opt-out despite notice.  The appellant now challenges
those conclusions.  For the reasons explained below, the appeal
is dismissed.


                              **I.**

     On November 7, 2011, Dynegy Holdings LLC and certain of its
indirect subsidiaries filed a voluntary petition for relief
under chapter 11 of the United States Bankruptcy Code.  (Ex. 3
at 1.)[1]  In December 2011, the Bankruptcy Court authorized the

---

[1] Unless otherwise indicated, all parenthetical citations are to
the Record on Appeal provided by the parties.

appointment of an independent examiner to investigate allegations of fraud and fraudulent transfers between Dynegy Holdings LLC, Dynegy Inc., and other subsidiaries.  (Ex. 2.) The examiner reached the conclusion that the Debtors' boards of directors breached their fiduciary duties by approving and carrying out fraudulent transfers between Dynegy Inc. and certain of its subsidiaries.  (Ex. 3 at 1-4.)  In or about May 2012, the Debtors and certain major stakeholders reached an agreement settling claims stemming from the investigation.  (Ex. 7.)  Under the settlement agreement, shareholders of Dynegy Inc. as of July 2, 2012,[2] received one percent of the equity in the entity that would emerge from the bankruptcy of Dynegy Inc. as well as certain warrants.  (Hr'g Tr. 3-4, May 21, 2013.)[3]

On or about March 28, 2012, Charles Silsby filed a securities class action complaint in this Court against Dynegy Inc. and several individual defendants.  (See Ex. 4 ("Compl.").) The complaint named as individual defendants Dynegy Inc.'s alleged controlling shareholder, Carl C. Icahn, the President, Chief Executive Officer, and Director, Robert C. Flexon, and the

---

[2] While the appellant stated that the cutoff date for the Settlement Agreement was July 12, 2012, the appellee indicated that the cutoff date was July 2, 2012.  (Tr. 20.)  The exact date is not relevant to this appeal.
[3] Neither the appellant nor any members of the putative class were parties to the settlement agreement.  Moreover, former shareholders that are members of the putative securities class were not provided for in the settlement agreement.

Executive Vice President and Chief Financial Officer, Clint C.
Freeland. (<u>See</u> Compl. ¶¶ 1-2, 10-15.)

The Complaint alleges that Dynegy Inc., Flexon, and
Freeland violated section 10(b) of the Exchange Act of 1934, 15
U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, by
disseminating false and misleading information and failing to
disclose material facts with respect to Dynegy's financial
performance and prospects. (Compl. ¶¶ 44, 48.) The Complaint
also alleges a claim against all of the individual defendants
under section 20(a) of the Exchange Act for controlling the
primary violator, Dynegy Inc. (Compl. ¶¶ 53-60.) The putative
class includes investors who purchased or otherwise acquired
Dynegy Inc. common stock on the New York Stock Exchange between
September 2, 2011, and March 9, 2012. (Compl. ¶ 1.)

On July 6, 2012, Dynegy Inc. filed a voluntary petition for
relief under chapter 11 of the United States Bankruptcy Code.
(Ex. 14 at ¶ 1.) On July 7, 2012, this Court entered an order
in the putative securities class action that stayed the
securities litigation as to Dynegy Inc. pursuant to 11 U.S.C.
§ 362(a). <u>See</u> Stay Order, <u>Silsby v. Icahn</u>, No. 12 Civ. 2307
(S.D.N.Y. July 7, 2012). The securities litigation was not
stayed against the individual defendants. <u>See</u> <u>id.</u> On July 9,
the Bankruptcy Court held a hearing on Dynegy Inc.'s bankruptcy
petition. (Ex. 18.) At the hearing, an attorney appeared on

behalf of Charles Silsby, the named plaintiff in the putative securities class action. (Ex. 18 at 9-10, 52-61.) The attorney raised several arguments respecting notice to the members of the putative class. (Ex. 18 at 52-61.)

On July 10, 2012, the Bankruptcy Court approved the disclosure statement in the Dynegy Inc. action. See Disclosure Statement Order, In re Dynegy Inc., No. 12-36728 (Bankr. S.D.N.Y. July 10, 2012) (approving disclosure statement, solicitation and voting procedures, and scheduling the plan confirmation process). The Disclosure Statement Order provided that the proponents of the Plan were "not required to distribute or serve copies of the Plan, Ballots, Confirmation Hearing Notice, [Dynegy Inc.] Stakeholder Notice, [Dynegy Inc.] Provisional Ballot, Disclosure Statement Order or Disclosure Statement to any holder of a claim or interest in the Non-Voting Classes." Id. at 9. The "Non-Voting Classes" included Dynegy Inc. shareholders, some of whom are members of the putative securities class. Id. at 4, ¶ F. The Disclosure Statement Order further provided that "Notice of Non-Voting Status shall be distributed to holders, as of [July 2, 2012], of Claims and interests in the Non-Voting Classes . . . ." Id. at 7, 10.[4]

---

[4] The Notice of Non-Voting Status explained that the Plan contained releases of third party non-debtors and that a party could opt-out of the releases. See Dynegy Inc. Disclosure Statement Order, Ex. C. However, any members of the putative

The Disclosure Statement Order required that the
"Confirmation Hearing Notice" be published in the national
editions of The New York Times and The Wall Street Journal on or
before July 13, 2012.  Id. at 19.  The Confirmation Hearing
Notice explained that the Plan included third party releases
that would be binding unless a party opted-out.  See id. Ex. D
¶ 9.

On July 12, the Debtors filed the Plan, the Disclosure
Statement, and Solicitation Materials.  (Ex. 19 at Ex. 1
("Plan").)  The Plan includes a release provision (the
"Release") that releases from liability non-debtor third parties
who are defendants in the putative securities class action.
Specifically, section 8.20 of the Plan provides in relevant
part:

> Subject to the occurrence of the Effective Date, for
> good and valuable consideration, any holder of a Claim
> or Equity Interest that is impaired or unimpaired
> under the Plan shall be presumed conclusively to have
> released the Released Parties from any Cause of Action
> based on the same subject matter as such Claim against
> or Equity Interest in the Surviving Entity . . . .

(Plan § 8.20.)  The "Released Parties" are defined by the Plan
to include:

> (a)  [Dynegy Holdings], Dynegy [Inc.], the Surviving
>      Entity, and each of their Affiliates, . . . (j)
>      the present and former directors, officers,

class that were former shareholders of Dynegy Inc. and sold all
shares prior to July 2, 2012 were not provided individual notice
of "Non-Voting Status." (Tr. 33-34)

> managers, equity holders, agents, successors,
> assigns, attorneys, accountants, consultants,
> investment bankers, bankruptcy and restructuring
> advisors, financial advisors, . . . and (k) any
> Person claimed to be liable derivatively through
> any of the foregoing.

(Plan Ex. A at ¶ 138.)  The parties agree that the

individual defendants in the securities litigation are

within the scope of the Release.

The Release has two relevant exceptions.  First, it does

not cover "intentional fraud, willful misconduct, gross

negligence, or criminal conduct as determined by a Final Order

. . . ."  (Plan § 8.20.)  The parties agree that the appellant's

claim under section 10(b) of the Exchange Act is a claim that is

not within the scope of the Release.  Therefore, only the

section 20(a) claim is possibly within the purview of the

Release.  Second, the Release does not apply to "any holder of a

Claim or Equity Interest . . . that elects to 'opt out' of such

releases by making such election on its timely submitted ballot

(to the extent it receives a ballot) or in a written notice

submitted to the Solicitation Agent on or before the Plan

Objection Deadline."  (Plan § 8.20.)

In addition to the Release, section 15.25 of the Plan

contains an injunction that precludes litigation against non-

debtor third parties.  (Plan § 15.25.)  Section 15.25 provides:

> [E]xcept as otherwise provided herein, all Persons who
> have been, are, or may be holders of Claims against or

7

Equity Interests in the Surviving Entity shall be permanently enjoined from taking any of the following actions against . . . any of [the Debtors'] current or former respective members, equity holders, directors, managers, officers, employees, agents, and professionals, . . .:

(i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, all suits, actions and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice) . . . .

(Plan § 15.25.)

On July 13, 2012, the appellant was appointed lead plaintiff in the securities litigation and Levi & Korsinky LLP was appointed lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B) and § 77z-1(a)(3)(B).  (See Ex. 20 ("Lead Plaintiff Order").).  The Lead Plaintiff Order appointed the appellant as lead plaintiff in the "Action," defined as "the above captioned action," Silsby v. Icahn.  (Lead Plaintiff Order ¶ 1.)  The securities litigation is at a preliminary stage and no class has been certified.

On August 20, 2012, lead counsel submitted a letter to this Court requesting that the Lead Plaintiff Order be modified to clarify that the lead plaintiff had the authority to opt-out of the Release on behalf of the class.  Lead counsel explained that "[a]lthough we maintain that the authority granted to us as Lead Counsel in the July 13 Order is sufficient, further

clarification is requested . . . ."  (Ex. 25 at 1.)  As

"clarification," lead counsel requested that the Court amend the

Lead Plaintiff Order to provide that lead counsel was the

representative of the class:

> [I]n the Action <u>and</u> in the pending Chapter 11
> bankruptcy proceedings of Dynegy, Inc. . . .
> including, without limitation, to oppose any non-
> debtor releases (including releases of the defendants
> in this Action) sought by Dynegy, Inc. under its
> Chapter 11 plan of reorganization or otherwise, and to
> 'opt out' on behalf of the class of any release or
> related injunctive provisions set forth in a Chapter
> 11 plan or otherwise.

(Ex. 25 at 2 (emphasis added).)  On July 23, 2012, the

application was denied.  (Ex. 27 at 3.)[5]

On August 2, 2012, the Debtors filed Notice with the

Bankruptcy Court that the Confirmation Hearing Notice had been

published in both The New York Times and The Wall Street

Journal.  (Exs. 22, 23.)  On August 24, 2012, the appellant

timely submitted an opt-out election to the Bankruptcy Court on

behalf of himself and on behalf of the putative class he

represents in the securities litigation.  (Ex. 28.)  The

appellant also submitted a timely objection to confirmation of

the Plan on behalf of himself and on behalf of the putative

securities class.  (See Ex. 29 ("Lucas Objection").)  The

---

[5] The application was denied by Judge Nathan sitting as the Part
I judge.  (Ex. 27 at 3.)

appellant argued in the objection that the Release was impermissible.  (Lucas Objection ¶ 22.)

The Bankruptcy Court held the confirmation hearing on September 5, 2012.  (Ex. 40.)  Prior to the confirmation hearing, Dynegy and the appellant agreed to defer consideration of the Lucas Objection in order to allow confirmation to proceed and to allow time for settlement negotiations.  (Ex. 40 at 18-19.)  On September 10, 2012, the Plan was confirmed subject to a full reservation of rights with respect to the Lucas Objection. (See Ex. 41 ("Confirmation Order") ¶ 55.)  After settlement negotiations were unsuccessful, the Bankruptcy Court held a hearing concerning the Lucas Objection on October 1, 2012.  (See Ex. 47 ("Obj. Hr'g").)

After listening to the parties' arguments, the Bankruptcy Court overruled the Lucas Objection.  The Bankruptcy Court held that it had subject matter jurisdiction to grant the Release because the Release affects the res of the bankruptcy estate. (Obj. Hr'g at 180-81.)  The Court held that the lead plaintiff lacked standing on his own behalf and on behalf of the class. The Court explained that the lead plaintiff lacked standing on his own behalf to object to the Release because he had timely opted out of the Release and therefore a decision whether the Release was permissible would not affect his rights.  (Obj. Hr'g at 182-83.)  The Court held that the lead plaintiff lacked

standing to opt-out of or object to the Release on behalf of the class because he had no authority to represent the putative securities class outside of the securities litigation. (Obj. Hr'g at 183-88, 189-94.) Despite the standing deficiencies, the Bankruptcy Court reached the merits of the objection and found that the Release was permissible based on implied consent, because the affected parties had received notice but had not opted-out of the Release. (Obj. Hr'g at 195-97.) On October 4, 2012, the Bankruptcy Court entered a written order confirming its ruling at the hearing and overruling the appellant's objection to the Plan. (Ex. 48.) On October 12, 2012, the lead plaintiff filed a notice of appeal from the October 4 order of the Bankruptcy Court on behalf of himself and on behalf of the putative securities class. See Notice of Appeal, In re Dynegy Inc., No. 12-36728 (Bankr. S.D.N.Y. Oct. 12, 2012).


## II.

### A.

When reviewing a decision of the Bankruptcy Court, this Court reviews the Bankruptcy Court's conclusions of law de novo but accepts its findings of fact unless they are clearly erroneous. See Fed. R. Bankr. P. 8013; In re Halstead Energy Corp., 367 F.3d 110, 114 (2d Cir. 2004).

**B.**

The initial question is whether the appellant's status as lead plaintiff in the putative securities class action provided him with standing to opt-out of the Release or to object to the Release on behalf of the putative securities class in the Bankruptcy Court.  As the appellant correctly notes, if he had standing to opt-out of the Release on behalf of the putative class, the rest of the issues are essentially moot, because the Release would be inapplicable to the putative class in the securities litigation.  The appellant argues that the Lead Plaintiff Order and his status as lead plaintiff in the securities class action provided him with standing in the Bankruptcy Court to opt-out and to object to the Release on behalf of the putative class.  The appellee argues that the Bankruptcy Court was correct when it concluded that neither the Lead Plaintiff Order nor the appellant's obligation to the putative class conferred standing on the appellant to represent the putative class in the Bankruptcy Court.  Because the appellant failed to move for the application of the class action rule before the Bankruptcy Court, the appellant lacked standing to opt-out of or to object to the Release on behalf of the putative securities class.

"The plaintiff generally must assert his own legal rights and interest, and cannot rest his claim to relief on the legal

rights or interests of third parties." <u>Warth v. Seldin</u>, 422
U.S. 490, 499 (1975) (citations omitted); <u>see also Moose Lodge
No. 197 v. Irvis</u>, 407 U.S. 163, 166 (1972) ("[A plaintiff] has
standing to seek redress for injuries done to him, but may not
seek redress for injuries done to others.") (citations omitted).
"The prudential concerns limiting third-party standing are
particularly relevant in the bankruptcy context." <u>Kane v.
Johns-Manville Corp.</u>, 843 F.2d 636, 644 (2d Cir. 1988).  As the
Court of Appeals for the Second Circuit explained in <u>Kane</u>:

> Though this limitation is not dictated by the Article
> III case or controversy requirement, the third-party
> standing doctrine has been considered a valuable
> prudential limitation, self-imposed by the federal
> courts . . . .  [T]he Supreme Court articulated two
> important policies justifying such a limitation:
> "first, the courts should not adjudicate [third-party]
> rights unnecessarily, and it may be that in fact the
> holders of those rights either do not wish to assert
> them, or will be able to enjoy them regardless of
> whether the in-court litigant is successful or not.
> Second, third parties themselves usually will be the
> best proponents of their own rights."

<u>Id.</u> at 643 (quoting <u>Singleton v. Wulff</u>, 428 U.S. 106, 113-14
(1976)).

Rule 23 of the Federal Rules of Civil Procedure governs
class actions in federal civil cases.  The class action is "an
exception to the usual rule that litigation is conducted by and
on behalf of the individual named parties only." <u>Comcast Corp.
v. Behrend</u>, 133 S. Ct. 1426, 1432 (2013) (quoting <u>Califano v.
Yamasaki</u>, 442 U.S. 682, 700-701 (1979)).  "The Rule 23 class

action device is an exception to the limits on third-party standing." Adams v. Luxottica U.S. Holdings Corp., No. SA Civ. 07 1465, 2009 WL 7401970, at *2 (C.D. Cal. July 24, 2009) (citing Califano, 442 U.S. at 700-01).

Rule 23 applies in bankruptcy proceedings, either automatically or at the discretion of the Bankruptcy Court. "All disputes in bankruptcy are either adversary proceedings or contested matters." In re American Reserve Corp., 840 F.2d 487, 488 (7th Cir. 1988) (citing Daniel R. Cowans, 1 Bankruptcy Law and Practice 189 (1986)). Rule 7023 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") provides that Rule 23 of the Federal Rules of Civil Procedure "applies in adversary proceedings." Fed. R. Bankr. P. 7023. Bankruptcy Rule 9014 provides that in "a contested matter" the court "may at any stage in a particular matter direct that one or more of the other rules in Part VII [which includes Rule 7023] shall apply." Fed. R. Bankr. P. 9014(c); see also In re Charter Co., 876 F.2d 866, 873 (11th Cir. 1989) ("Rule 23 may be invoked . . . in an adversary proceeding and in a contested matter. Pursuant to the terms of Bankruptcy Rule 7023, Rule 23 applies in any adversary proceeding. Also, under Bankruptcy Rule 9014, the bankruptcy judge may at his discretion apply Bankruptcy Rule 7023, and by extension Rule 23, in a contested matter.").

At the discretion of the Bankruptcy Court, Rule 23 may be
invoked in the context of an objection to the confirmation of a
chapter 11 plan.  The objection to the confirmation of a chapter
11 plan is a "contested matter."  See Fed. R. Bankr. P.
3020(b)(1) ("An objection to confirmation is governed by Rule
9014."); Bear Tooth Mountain Holdings Ltd. P'ship v. ML Manager
LLC ("In re Mortgs. Ltd."), No. 2:08 bk 07465 RJH, 2013 WL
1336830, at *4 n.12 (Bankr. D. Ariz. Mar. 28, 2013) ("Pursuant
to [Rule] 3020(b) . . . and 9014, confirmation of plans and
hearings on objections to confirmation are contested
matters . . . ."); In re Farrell, 38 B.R. 654, 655 (Bankr. W.D.
Mo. 1984).[6]  This case involves an objection to a chapter 11
plan.  Therefore, Bankruptcy Rule 9014 provided the Bankruptcy
Court with discretion to decide whether to apply Bankruptcy Rule
7023 and with it the latter's inclusion of Rule 23.  In re
Ephedra Prods. Liab. Litig., 329 B.R. 1, 5 (S.D.N.Y. 2005); see
also In re Am. Reserve Corp., 840 F.2d at 488 ("Rule 23 may
apply . . . at the bankruptcy judge's discretion.").

---

[6] Although neither party cites a single case in which a class
action has been used in the context of a class-wide objection to
confirmation or class-wide opt-out of a third party release,
neither party has argued that it would have been outside the
Bankruptcy Court's discretion to apply Bankruptcy Rule 7023 to
this action.  The Bankruptcy Court indicated that the appellant
never petitioned the Court to use Bankruptcy Rule 7023.  (Obj.
Hr'g at 193-94.)

The appellant's failure to seek the application of a class action rendered him unable to represent a class that had never been designated by the Bankruptcy Court, much less assume the role of representative of such an undesignated class. Therefore, he could not opt out of the Release or object to it on behalf of a class. "The right to proceed as a class [in Bankruptcy Court] . . . is not automatic." In re Woodward & Lathrop Holdings, 205 B.R. 365, 369 (Bankr. S.D.N.Y. 1997). "The burden is on the claimant to obtain application of Rule 7023 and also to satisfy the requirements of Rule 23 itself." In re Computer Learning Ctrs., Inc., 344 B.R. 79, 85 (Bankr. E.D. Va. 2006); see also In re Craft, 321 B.R. 189, 198-99 (Bankr. N.D. Tex. 2005). Rule 23 requires that a class action determination must be made at "an early practicable time." Fed. R. Civ. P. 23(c)(1)(A); see In re Woodward & Lathrop Holdings, 205 B.R. at 369-70; In re Bicoastal Corp., 133 B.R. 252, 255-56 (Bankr. M.D. Fla. 1991). The appellant's counsel has been aware of the bankruptcy proceedings since at least the hearing before the Bankruptcy Court that counsel attended on July 9, 2012. (Obj. Hr'g at 189, 193.) However, as the Bankruptcy Court explained, the appellant "utterly failed to move under Rule 9014 to make Rule 23 applicable in this bankruptcy case, despite having more than two months to do so" and "attempted to sidestep the federal rules, and act with authority that he has not yet

been granted." (Obj. Hr'g at 193-94.)  Therefore, because the
appellant never attempted to initiate class proceedings in the
Bankruptcy Court, the appellant represented no one but himself
before the Bankruptcy Court.

The appellant argues that the Lead Plaintiff Order in the
putative securities litigation was sufficient to authorize
standing in the separate bankruptcy proceeding.  However, the
Lead Plaintiff Order expressly limited the appellant's authority
to the "above captioned action," the securities litigation.
(Lead Plaintiff Order ¶ 1.)  The appellant attempted to broaden
the Order to cover the proceedings in the Bankruptcy Court but
that application was denied.  The express terms of the Lead
Plaintiff Order did not provide the appellant with standing in
the Bankruptcy Court.

Moreover, the designation of the appellant as "lead
plaintiff" in the putative securities class action would not
bind the Bankruptcy Court to allow the appellant to represent
the same putative class in the Bankruptcy Court.  The
designation of class status in a bankruptcy case raises distinct
issues from other litigation.  See, e.g., In re Craft, 321 B.R.
at 198-99.  Even when a class action has been certified in a
related district court proceeding, the bankruptcy court may
decline to permit a class action in Bankruptcy Court by refusing
to make Bankruptcy Rule 7023 applicable.  See Reid v. White

17

Motor Corp., 886 F.2d 1462, 1470-71 (6th Cir. 1989); In re Zenith Labs. Inc., 104 B.R. 659, 664 (Bankr. D.N.J. 1989).  In Reid, the Court of Appeals for the Sixth Circuit affirmed the bankruptcy court's denial of a class proof of claim filed by an attorney, despite the attorney being authorized to represent the class and having obtained certification of the class in a district court proceeding prior to bankruptcy, because the attorney, among other things, failed to petition timely the bankruptcy court to apply Bankruptcy Rule 7023.  Reid, 886 F.2d at 1470-71; see also In re Zenith Labs. Inc., 104 B.R. at 664 ("Clearly, there are compelling reasons for certifying the shareholder class as I concluded when I certified the class [prior to bankruptcy].  However, there may be other factors in the bankruptcy proceeding that make class certification there less compelling and . . . a different result might be appropriate.")).  Therefore, even had the appellant been the lead plaintiff of a certified class action in the district court, he still would have had to move for the application of Bankruptcy Rule 7023 in the Bankruptcy Court in order to represent the putative securities class in that forum.  His failure to move for the invocation of Rule 7023 results in his lack of standing to represent the class in the bankruptcy proceeding.

The appellant, relying on a number of cases which explain that a lead plaintiff has fiduciary obligations to a putative class, argues that his fiduciary responsibilities give rise to standing in the bankruptcy proceeding. See, e.g., Schick v. Berg, No. 03 Civ. 5513, 2004 WL 856298, at *4-5 (S.D.N.Y. Apr. 20, 2004); In re Oxford Health Plans, Inc. Secs. Litig., 182 F.R.D. 42, 46-47 (S.D.N.Y. 1998); Rothman v. Gould, 52 F.R.D. 494, 496 (S.D.N.Y. 1971).  However, those cases are distinct from the circumstances here.  None involved a lead plaintiff in one putative class action that was invoking his fiduciary obligations to represent the putative class in a separate proceeding, especially not a bankruptcy proceeding that required the invocation of Bankruptcy Rule 9014.  The appellant's fiduciary obligations to the putative class in the securities litigation do not confer on him the status of a class representative in the bankruptcy proceeding for a class that has never been designated.  At most his fiduciary responsibilities might have caused him to make a class action motion in the bankruptcy proceeding, a motion he never made.

The appellant failed to make a motion to apply Rule 23 in the Bankruptcy Court and the Lead Plaintiff Order did not extend to the bankruptcy proceeding.  The appellant cites no case that would allow him to exercise authority before the Bankruptcy Court that he had not been granted in that proceeding.

Therefore, for all practical purposes, the appellant is a lone plaintiff attempting to exercise the rights of nonparties by attempting to opt out of or object to the Release on their behalf.  Such action runs afoul of the prohibition against third party standing.  The Bankruptcy Court concluded correctly that the appellant lacked standing to opt-out of or object to the Release on behalf of the putative class.

### c.

Although the appellant lacked standing to opt-out of or object to the Release on behalf of the putative class, the question remains whether the appellant had standing to object to the Release on his own behalf.  The Bankruptcy Court concluded that the appellant did not have standing on his own behalf because he opted-out of the Release.  The appellant argues that because he is the lead plaintiff for the putative securities class action, he has standing to object to the Release even though he opted out in his individual capacity.  Because the appellant has opted out of the Release and therefore is unaffected by a determination whether the Release is valid, he lacks standing to pursue the objection on appeal.

"[I]n order to have standing to appeal from a bankruptcy court ruling, an appellant must be 'a person aggrieved' — a person 'directly and adversely affected pecuniarily' by the

challenged order of the bankruptcy court." Dish Network Corp.
v. DBSD N. Am., Inc. ("In re DBSD N. Am., Inc."), 634 F.3d 79,
89 (2d Cir. 2010) (quoting Int'l Trade Admin. v. Rensselaer
Polytechnic Inst., 936 F.2d 744, 747 (2d Cir. 1991)). "An
appellant . . . must show not only 'injury in fact' under
Article III but also that the injury is 'direct[]' and
'financial.' Id. (quoting Kane, 843 F.2d at 642 & n.2 (2d Cir.
1988)). The appellant opted out of the Release. Therefore,
regardless of a judicial determination of the validity of the
Release, the appellant may continue with his claims against the
defendants in the securities litigation. Because the appellant
opted out of the Release and may pursue his claims, he was not
directly affected in any pecuniary way by the order of the
Bankruptcy Court that the Release was valid, and he lacks
standing to appeal the order of the Bankruptcy Court.

The appellant argues that because he is the designated lead
plaintiff of the putative securities class, he may continue to
object to the Release in the Bankruptcy Court on behalf of the
putative securities class even after his individual claims have
been preserved by his opt-out of the Release. However, the
cases the appellant relies upon are distinguishable. See
Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 329-32, 340
(1980); Pitts v. Terrible Herbst, Inc., 653 F.3d 1081, 1089 (9th
Cir. 2011). Both cases dealt with whether a named plaintiff in

a purported class action could move for class certification,
Pitts, 653 F.3d at 1089, or appeal the denial of class
certification, Roper, 445 U.S. at 340, after the named
plaintiff's individual claims arguably became moot.  Recently,
the Supreme Court indicated that the rule in Roper is limited to
the unique situation of class certification.  Genesis Healthcare
Corp. v. Symczyk, 133 S. Ct. 1523, 1532 (2013).  This case does
not involve class certification because, unlike Pitts and Roper,
the appellant was not the named plaintiff of a class action
before the Bankruptcy Court.  The appellant never attempted to
invoke Rule 23 in the Bankruptcy Court and therefore was not
representing anyone at the time he opted-out of the Release.
The cases the appellant relies upon, which discuss the
consequences of the mooting of a named plaintiff's claims in a
Rule 23 class action, are not relevant to this case because
there was no named plaintiff in a Rule 23 class before the
Bankruptcy Court.  Moreover, in Symczyk, the Court limited
Roper's holding to situations in which a named plaintiff still
had an "ongoing, personal economic stake in the substantive
controversy."  Id.  In this case, it is clear that the appellant
has no remaining economic stake in objecting to the Release,
because he is not bound by its terms and his individual claims
may proceed in this Court regardless of the validity of the
Release.

The appellant is attempting to use his status as lead plaintiff in the securities litigation to have his cake and eat it too — to opt out of the Release personally but also to challenge its validity in the separate bankruptcy proceeding. There is no authority supporting this position and it is at odds with standing doctrine.  The appellant lacks standing to opt out of or object to the Release on behalf of the putative class and to object to the Release individually.[7]

### CONCLUSION

The Court has considered all of the arguments of the parties.  To the extent not specifically addressed above, the remaining arguments are either moot or without merit.  For the reasons explained above, the appeal is **dismissed**.

**SO ORDERED.**

**Dated:      New York, New York**
**            June 4, 2013**                _____/s/_____
                                            **    John G. Koeltl**
                                            **United States District Judge**

---

[7] Because the appellant lacks standing, it is unnecessary to reach the remaining arguments including equitable mootness and the challenge to the Release on the merits.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 109-10 (1998) (holding that courts lack jurisdiction to address merits of a claim where party raising the claim is found to lack standing to maintain suit).